UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. O7-242 (RMC) |
| | : | |
| v. | : | JUDGE ROSEMARY M. COLLYER |
| | : | |
| JEROME MERRILL | : | HEARING JANUARY 4, 2008 |
| | : | |
| Defendant. | | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT
### MERRILL'S MOTION TO SUPPRESS STATEMENTS

The United States, by and through its attorney, The United States Attorney for the District of Columbia, hereby opposes Defendant Merrill's Motion to Suppress Statements.  In support of this Opposition, the government further states:

1. On February 11, 2005, at approximately 2:00 p.m., the victim in this case, Wayne Morris, was walking in the unit block of Seaton Place, N.W.  While there, he was approached by an undercover police officer who asked Wayne Morris if he had any marijuana to sell.  Mr. Morris stated that he did, and he proceeded to sell the undercover officer a bag of marijuana in exchange for $20 in U.S. currency.  The undercover officer walked a short distance away and radioed a lookout to a nearby arrest team.  Approximately five minutes later, as the arrest team moved in, Wayne Morris fled into a nearby market called the Seaton Market, which is located on the corner of North Capitol Street and Seaton Place, N.W.  Several officers continued to pursue Mr. Morris.

2. One of the officers who chased Mr. Morris into the Seaton Market was the defendant, Officer Jerome Merrill.  The defendant was the first officer to enter the store behind Wayne Morris.  Mr. Morris ran to a deli counter  near the rear of the store, and closed a clear plexi-glass

door behind him. The defendant, who had his 9mm Glock service weapon drawn, chased Mr. Morris behind the deli counter. A store security camera recorded audio and video of this portion of the chase. In that security footage, the defendant can be seen holding his service weapon in his left hand as he rushes toward the deli area. After the defendant burst through the door near the deli area, the defendant struck Wayne Morris in the head with his service weapon. The store security camera captured audio of the assault. During the assault, the defendant is heard swearing at Mr. Morris, and at one time the defendant threatens to hit him in the head "again." Other officers arrived to help secure Mr. Morris. After Mr. Morris was handcuffed, one of the arresting officers noticed blood on the ground, and summoned an ambulance. While on the scene, Mr. Morris stated that he had been assaulted by an officer. An official then notified the Metropolitan Police Department's Force Investigation Team (hereinafter "FIT"). Such notifications are routine when a suspect is injured during an arrest. The defendant returned to duty and was not questioned at that time.

     3. Paramedics transported Mr. Morris to Greater Southeast Community Hospital. The medical staff observed two irregularly shaped lacerations on Mr. Morris' head. The first laceration, located over Mr. Morris' right eye, required four stitches to close. The second laceration, on the back, right side of Mr. Morris' head, required 3 staples to close. Mr. Morris informed the paramedics and the doctors that treated him that an officer had struck him with a handgun.

     4. After FIT was notified about the injuries to Mr. Morris, they launched a routine preliminary investigation into the arrest of Mr. Morris. In conjunction with that inquiry, officers assigned to FIT interviewed potential witnesses, including all of the officers who were present

during Mr. Morris' arrest. The lead agent assigned to the case, Sgt. Eric Levenberry, contacted the defendant and asked him to come to the FIT office. Sgt. Levenberry also advised the defendant that he should speak to an attorney and a union representative before being interviewed. The defendant appeared at FIT's offices located at 801 Shepard Street, N.W., Washington, D.C., for his interview with FIT at approximately 9:00 p.m. on February 11, 2005. The defendant was not under arrest and was not physically restrained in any way. As indicated by the statement itself, before meeting with FIT, the defendant spoke with an attorney, Robert Ades, Esq. Mr. Ades' firm is retained by the Fraternal Order of Police so that its members can have access to legal services in connection with use of force or other internal or criminal investigations. The defendant was also asked if he wished to speak to a union representative, or a counselor with the Emergency Assistance Program.

5. Before providing a statement, the defendant was advised of the nature of the investigation, as well as the fact that the results of the investigation would be turned over to the Office of the United States Attorney. The defendant was also advised that he was not required to provide a statement, and that his failure to provide a statement would not affect his employment with the Metropolitan Police Department.[1] In the statement, the defendant also acknowledged that he was being asked to provide a voluntary statement. When he was asked if he wanted to provide a voluntary statement, the defendant responded by saying "absolutely."

6. Over the course of the next two hours, the defendant provided a detailed statement to Sgt. Levenberry. The interview was conducted in a question and answer format. Each question

---

[1] This information is provided to officers to avoid a violation of the rights protected by Garrity v. New Jersey, 385 U.S. 493 (1967).

and answer was typed onto a PD-119 form. The defendant then reviewed each page of the statement, and the defendant, Sgt. Levenberry, and another FIT investigator who witnessed the statement, Sgt. Norman Powers, then signed each page of the statement. The statement is attached as Attachment I. At the end of the statement, the defendant was excused. At no time was the defendant restrained, told he was under arrest, or otherwise taken into custody.

Argument

7. The defendant first argues that his statement was taken before he was properly advised of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). This argument must fail because the defendant was not in custody at the time he provided a statement to FIT. As Judge Bates recently noted, in this jurisdiction officers are only required to provide Miranda warnings to individuals when they are taking a statement from an individual who is in custody. United States v. Peterson, 506 F.Supp.2d 21, 22-23 (D.D.C. 2007). This is consistent with the well established rule that Miranda warnings are required only when an individual is "subjected to custodial police interrogation." Miranda 384 U.S. at 439. The Supreme Court has defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444; see also Hairston v. United States, 500 A.2d 994, 997 (D.C. 1985) (quoting Miranda). A person is in custody for Miranda purposes when the police have effected a "'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam) (quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977)); see also Berkemer v. McCarty, 468 U.S. 420, 440 (1984) (quoting Beheler).

8. The appropriate standard to be applied in determining whether a person's movement has been restrained to a degree associated with formal arrest, and therefore is "in custody," is whether the actions of the police officers would induce "a reasonable man, innocent of any crime," to consider himself under arrest. <u>Conyers v. United States</u>, 237 A.2d 838, 840 (D.C. 1968), citing <u>Hicks v. United States</u>, 382 F.2d 158, 161 (D.C. 1967). The standard the Court must apply is an objective one, and does not depend on "the subjective views harbored by either the interrogating officers or the person being questioned." <u>Stansbury v. California</u>, 511 U.S. 318, 323 (1994); <u>Conyers</u>, 237 A.2d at 839.

9. In this case, the defense has not alleged any facts that suggest that at any time the defendant was placed under arrest, detained, restrained, or otherwise led to believe that he was under arrest, before he provided his voluntary statement to FIT. Indeed, the defendant walked into the FIT office, voluntarily provided his statement, and walked out. There is no objectively reasonable argument that the defendant was in custody at the time he provided his statement to FIT. As such, Sgt. Levenberry was not required to advise the defendant of his <u>Miranda</u> rights.

10. The defendant also appears to make a broader argument that even beyond <u>Miranda</u>, his statement was taken in violation of his right to due process. It is clear from the circumstances surrounding this statement that it was entirely voluntary and not in violation of his right to due process. "A confession is inadmissible as a matter of due process if under the totality of the circumstances it was involuntarily obtained." <u>United States v. Bradshaw</u>, 935 F.2d 295, 299 (D.C. Cir.1991). Further:

> "[Voluntariness] cases considered by the Court over the 50 years since [the Supreme Court's seminal confession case], <u>Brown v. Mississippi</u>[, 297 U. S.278 (1936),] have focused upon the crucial element of police overreaching. While

each confession case has turned on its own set of factors justifying the conclusion that police conduct was oppressive, all have contained a substantial element of coercive police conduct. Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law."

Colorado v. Connelly, 479 U. S.157, 163- 164 (1986).

11.  The government must establish the voluntariness of a confession "by no more than a preponderance of the evidence." Colorado v. Connelly, 479 U. S. at 168 (citing Lego v. Twomey, 404 U. S.477, 489 (1972)).  The "voluntariness inquiry" is the same in the Miranda waiver context and in the due process voluntariness context and both turn "on the same factor [,] police coercion." United States v. Bradshaw, 935 F.2d at 299 (citing Connelly, 479 U.S. at 169-170 (1986)).  In determining the voluntariness of a given statement from a defendant, the Supreme Court noted that "if [the defendant] has willed to confess, it [the confession] may be used against him.  If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process." Schneckloth v. Bustamonte, 412 U.S. 218 (1973), citing Culombe v. Connecticut, 367 U.S. 568 (1961), at 602. The Supreme Court in Schneckloth further observed that:

> "In determining whether a defendant's will was over-borne in a particular case, the Court has assessed the totality of all the surrounding circumstances -- both the characteristics of the accused and the details of the interrogation. Some of the factors taken into account have included the youth of the accused, e.g., Haley v. Ohio, 332 U.S. 596 [1948]; his lack of education, e.g. Payne v. Arkansas, 356 U.S. 560 [1958]; or his low intelligence, e.g., Fikes v. Alabama, 352 U.S. 191 [1957]; the lack of any advice to the accused of his constitutional rights, e.g., Davis v. North Carolina, 384 U.S. 737 [1966]; the length of detention, e.g., Chambers v. Florida, 309 U.S. 227 [1940]; the repeated and prolonged nature of the questioning, e.g., Ashcraft v. Tennessee, 322 U.S. 143 [1944]; and the use of physical punishment such as the deprivation of food or sleep, e.g., Reck v. Pate, 367 U.S. 433 [1961].  In all of these cases, the Court determined the factual circumstances

surrounding the confession, assessed the psychological impact on the accused, and evaluated the legal significance of how the accused reacted. Culombe v. Connecticut, supra, at 603."

Schneckloth, 412 U.S. at 226.

12. A consideration of these factors reveals that the defendant's statement was entirely voluntary. As indicated in the statement, the defendant spoke to an attorney before he provided his statement. Sgt. Levenberry also gave the defendant the opportunity to consult with a union representative or an emergency assistance counselor before providing a statement. Sgt. Levenberry also told the defendant that he was not required to provide a statement, and that the failure to provide a statement would not impact his employment. The defendant, who is himself a Metropolitan Police Department officer, understood his rights and still elected to provide a voluntary statement. There are no facts known to the government, or proffered by the defense, that suggest that Sgt. Levenberry, or any other official, coerced a statement from the defendant.

13. Accordingly, because the defendant was not in custody at the time he provided his statement, he was not entitled to Miranda warnings. Further, because the defendant voluntarily provided a statement to FIT, free of any coercion, there was no violation of due process. Therefore, the government respectfully requests that this Court deny the defendant's Motion to Suppress Statements.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
Bar No. 498610

By:             /s/
John Cummings
Assistant United States Attorney
Member Maryland Bar
555 4th Street, N.W., Room 4838
Washington, DC 20530
(202) 514-7561
john.cummings@usdoj.gov


                /s/
C. Douglas Kern
Ohio # 0072864
Trial Attorney
United States Department of Justice
Civil Rights Division, Criminal Section
601 D St. NW
Washington, DC 20004
(202) 514-3204
 Doug.Kern@usdoj.gov

| | METROPOLITAN POLICE DEPARTMENT<br>Washington, D.C.<br>COMPLAINANT/WITNESS STATEMENT | | P.D. 119 REV. 10/89 |
|---|---|---|---|
| | | 1. | COMPLAINT NO.<br>054-942 |
| 2. | NATURE OF INVESTIGATION<br>Police Use of Force Investigation | 3. | UNIT FILE NO. |
| 4. | STATEMENT OF: (Last, First, Middle)<br>Merrill, Jerome | 5. DOB<br>Adult | 6. SEX<br>Male |
| 7. | HOME ADDRESS<br>On File | 8. | HOME PHONE<br>On File |
| 9. | EMPLOYMENT (Occupation and Location)<br>Metropolitan Police Department Fifth district | 10. | BUSINESS PHONE<br>On File |
| 11. | LOCATION STATEMENT TAKEN<br>801 shepherd Street, N.W., Washington, D.C. | | |
| 12. | NAME OF OFFICER TAKING STATEMENT (If other than block 18<br>Sergeant Eric Levenberry          include signature) | 13. | DATE/TIME STARTED<br>2/11/05 2104 |

14. STATEMENT

I am Sergeant Eric Levenberry of the Metropolitan Police Departments Force Investigation Team. This office is investigating the facts and circumstances surrounding the allegation of a Serious Use of Force incident, which occurred on Friday, February 11, 2005, at approximately 1400 hours inside of 1822 North Capital Street, Northwest. The facts of this investigation will be turned over to the United States attorney's office for criminal and civil rights review.

Do you understand that this is a voluntary statement, and that you are not being compelled to give this statement?

Yes.

Do you understand that if you wish not to provide a statement it will not affect your employment with the Metropolitan Police Department?

Yes

Have you spoken to your Attorney?

Yes

What Attorney?

Robert Addes

Do you want to give a voluntary statement?

Absolutely

15. I HAVE READ THIS STATEMENT GIVEN BY ME OR HAVE HAD IT READ TO ME. I FULLY UNDERSTAND IT AND CERTIFY THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION. "I UNDERSTAND THAT MAKING OF A FALSE STATEMENT IS PUNISHABLE BY CRIMINAL PENALTIES (D.C. CODE SECTION 22-2514)".

_Signature of Person Giving Statement_

16. DATE/TIME ENDED
2/11/05 2313

17. Page 1 of 8 Pages

18. OFFICER OBTAINING THE SIGNATURE IN BLOCK 15:
(Name and Signature)

PERSON WITNESSING THE SIGNATURE IN BLOCK 15:
(Name and Signature)

| METROPOLITAN POLICE DEPARTMENT Washington, D.C. COMPLAINANT/WITNESS STATEMENT | | P.D. 119 REV. 10/89 1. COMPLAINT NO. 054-942 | |
|---|---|---|---|
| 2. | NATURE OF INVESTIGATION Police Use of Force Investigation | 3. UNIT FILE NO. | |
| 4. | STATEMENT OF: (Last, First, Middle) Merrill, Jerome | 5. DOB Adult | 6. SEX Male |
| 7. | HOME ADDRESS On File | 8. HOME PHONE On File | |
| 9. | EMPLOYMENT (Occupation and Location) Metropolitan Police Department Fifth district | 10. BUSINESS PHONE On File | |
| 11. | LOCATION STATEMENT TAKEN 801 shepherd Street, N.W., Washington, D.C. | | |
| 12. | NAME OF OFFICER TAKING STATEMENT (If other than block 18 Sergeant Eric Levenberry                          include signature) | 13. DATE/TIME STARTED 2/11/05 2104 | |

14. STATEMENT

Have you spoken to a union representative?

No

Do you want to speak with a union representative?

No

Do you want to speak with a counselor from EAP?

No I am ok

Do you understand that this statement will be utilized in a criminal investigation?

Yes

What tour of duty were you working today?

9 to 5:30P.M.

What are your days off?

Sunday & Monday

15. I HAVE READ THIS STATEMENT GIVEN BY ME OR HAVE HAD IT READ TO ME. I FULLY UNDERSTAND IT AND CERTIFY THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION. "I UNDERSTAND THAT MAKING OF A FALSE STATEMENT IS PUNISHABLE BY CRIMINAL PENALTIES (D.C. CODE SECTION 22-2514)".

Signature of Person Giving Statement

16. DATE/TIME ENDED 2/11/05 2313

17. Page 2 of 8 Pages

18. OFFICER OBTAINING THE SIGNATURE IN BLOCK 15:
(Name and Signature)

PERSON WITNESSING THE SIGNATURE IN BLOCK 15:
(Name and Signature)

| | METROPOLITAN POLICE DEPARTMENT<br>Washington, D.C.<br>**COMPLAINANT/WITNESS STATEMENT** | | P.D. 119 REV. 10/89 |
|---|---|---|---|
| | | 1. | COMPLAINT NO.<br>054-942 |
| 2. | NATURE OF INVESTIGATION<br>Police Use of Force Investigation | 3. | UNIT FILE NO. |
| 4. | STATEMENT OF: (Last, First, Middle)<br>Merrill, Jerome | 5. DOB<br>Adult | 6. SEX<br>Male |
| 7. | HOME ADDRESS<br>On File | 8. | HOME PHONE<br>On File |
| 9. | EMPLOYMENT (Occupation and Location)<br>Metropolitan Police Department Fifth district | 10. | BUSINESS PHONE<br>On File |
| 11. | LOCATION STATEMENT TAKEN<br>801 shepherd Street, N.W., Washington, D.C. | | |
| 12. | NAME OF OFFICER TAKING STATEMENT (If other than block 18 include signature)<br>Sergeant Eric Levenberry | 13. | DATE/TIME STARTED<br>2/11/05  2104 |

14. STATEMENT

Were you in full uniform?

No, plain clothes

In your own words tell me what happened.

Members of the Fifth District Focus Mission Team were conducting a buy bust operation in the unit block of Seaton place, Northwest. I was in an observation post in the unit block of S Street, Northwest. Suspect-1 ( Wayne Morris) sold drugs to one of our undercover officers. After the illicit narcotics sale was complete, our undercover officer put out a lookout for a black male matching Mr. Morris's description. Members of the Fifth District Focus Mission arrest team moved in to stop Mr. Morris. As they were moving in for the arrest Mr. Morris entered the unit block of S Street, Northwest. It appeared as though Mr. Morris might get out of the reach of our arrest team. When Mr. Morris came into the unit block of S Street. I exited the observation post and shouted to Mr. Morris, " Metropolitan Police, put your hands up", at which time Mr. Morris fled on foot n/b on North Capitol Street, Northwest. At that time members of the arrest team were coming down North Capitol Street, and saw Mr. Morris. They jumped out of their vehicles and yelled police and for Mr. Morris to freeze. Mr. Morris kept fleeing on foot and then he ran inside of 1822 North Capitol Street, Northwest, (Convenience store). Mr. Morris then ran to the back of the store like he knew where he was going and he shut the door he ran through behind him. I could see through the door and I could see Mr. Morris behind the door. I kicked the door in and told Mr. Morris to get on the ground. He would not comply with my order and I attempted to put Mr. Morris on the ground. A struggle took place. I finally got Mr. Morris down and the struggle continued on the ground as Mr. Morris would not comply with my repeated orders to put his hands behind his back. I got Mr. Morris's right arm behind his back and at that point I moved to the side and another officer assisted with

15. I HAVE READ THIS STATEMENT GIVEN BY ME OR HAVE HAD IT READ TO ME. I FULLY UNDERSTAND IT AND CERTIFY THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION. "I UNDERSTAND THAT MAKING OF A FALSE STATEMENT IS PUNISHABLE BY CRIMINAL PENALTIES (D.C. CODE SECTION 22-2514)".

_Signature of Person Giving Statement_

| 16. DATE/TIME ENDED<br>2/11/05  2313 |
|---|
| 17.    Page  3 of  8 Pages |

18. OFFICER OBTAINING THE SIGNATURE IN BLOCK 15:
(Name and Signature)

PERSON WITNESSING THE SIGNATURE IN BLOCK 15:
(Name and Signature)

| | METROPOLITAN POLICE DEPARTMENT<br>Washington, D.C.<br>COMPLAINANT/WITNESS STATEMENT | | 1. | P.D. 119 REV. 10/89<br>COMPLAINT NO.<br>054-942 | |
|---|---|---|---|---|---|
| 2. | NATURE OF INVESTIGATION<br>Police Use of Force Investigation | | 3. | UNIT FILE NO. | |
| 4. | STATEMENT OF: (Last, First, Middle)<br>Merrill, Jerome | | 5. | DOB<br>Adult | 6. SEX<br>Male |
| 7. | HOME ADDRESS<br>On File | | 8. | HOME PHONE<br>On File | |
| 9. | EMPLOYMENT (Occupation and Location)<br>Metropolitan Police Department Fifth district | | 10. | BUSINESS PHONE<br>On File | |
| 11. | LOCATION STATEMENT TAKEN<br>801 shepherd Street, N.W., Washington, D.C. | | | | |
| 12. | NAME OF OFFICER TAKING STATEMENT (If other than block 18<br>Sergeant Eric Levenberry          include signature) | | 13. | DATE/TIME STARTED<br>2/11/05  2104 | |

14. STATEMENT

putting handcuffs on Mr. Morris. I am not sure which officer it was because things were happening rapidly and I was trying to catch my breath and I was struggling to get his left arm behind his back also. After I got his left arm behind his back the other officer grabbed it and placed handcuffs on his arm. I noticed Mr. Morris bleeding and the board was called to assist him.

I don't know if Mr. Morris obtained his injuries when I kicked the door in which he was behind or when we struggled to the ground and continued to struggle from there. Mr. Morris and I were wrestling as I was trying to get him into custody.

Q. When you first observed Mr. Morris where were you?
A. I was in the unit block of S Street, Northwest.

Q. Did you observed any injuries on Mr. Morris's head or face at that time?
A. No I did not he was about 30 feet away from me.

Q. Did you have a good view of Mr. Morris's face when he was 30 feet from you?
A. Yes

Q. Was Mr. Morris Bleeding when you made your original observation of him?
A. Not that I could see.

Q. Did you have a good view of Mr. Morris during your foot pursuit?
A.. He was about 40 feet in front of me and I could see the back of him.

15. I HAVE READ THIS STATEMENT GIVEN BY ME OR HAVE HAD IT READ TO ME. I FULLY UNDERSTAND IT AND CERTIFY THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION. "I UNDERSTAND THAT MAKING OF A FALSE STATEMENT IS PUNISHABLE BY CRIMINAL PENALTIES (D.C. CODE SECTION 22-2514)".

*Signature of Person Giving Statement*

16. DATE/TIME ENDED
2/11/05  2313

17. Page 4 of 8 Pages

18. OFFICER OBTAINING THE SIGNATURE IN BLOCK 15:
(Name and Signature)

PERSON WITNESSING THE SIGNATURE IN BLOCK 15:
(Name and Signature)

| METROPOLITAN POLICE DEPARTMENT Washington, D.C. COMPLAINANT/WITNESS STATEMENT | | P.D. 119 REV. 10/89 | |
|---|---|---|---|
| | | 1. COMPLAINT NO. 054-942 | |
| 2. NATURE OF INVESTIGATION Police Use of Force Investigation | | 3. UNIT FILE NO. | |
| 4. STATEMENT OF: (Last, First, Middle) Merrill, Jerome | | 5. DOB Adult | 6. SEX Male |
| 7. HOME ADDRESS On File | | 8. HOME PHONE On File | |
| 9. EMPLOYMENT (Occupation and Location) Metropolitan Police Department Fifth district | | 10. BUSINESS PHONE On File | |
| 11. LOCATION STATEMENT TAKEN 801 shepherd Street, N.W., Washington, D.C. | | | |
| 12. NAME OF OFFICER TAKING STATEMENT (If other than block 18 Sergeant Eric Levenberry            include signature) | | 13. DATE/TIME STARTED 2/11/05 2104 | |

14. STATEMENT

Q. Was he bleeding when you made this observation?
A. Not that I could see

Q. When did you first notice Mr. Morris was injured?
A. After he was handcuffed and in custody.

Q. Who had contact with Mr. Morris from the time he entered the store until the time he was handcuffed?
A. Myself

Q. At least one other officer had contact with Mr. Morris based on your statement who was that?
A. Either Officer Bagshaw or Officer Greene

Q. Which of the two are black?
A. Greene is black.

Q. Are aware that there is a videotape of this incident?
A. Yes

Q. Who struck Mr. Morris in the head with an elbow?
A. Nobody that I saw

Q. Are you sure?
A. Yes

15. I HAVE READ THIS STATEMENT GIVEN BY ME OR HAVE HAD IT READ TO ME. I FULLY UNDERSTAND IT AND CERTIFY THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION. "I UNDERSTAND THAT MAKING OF A FALSE STATEMENT IS PUNISHABLE BY CRIMINAL PENALTIES (D.C. CODE SECTION 22-2514)".

Signature of Person Giving Statement

16. DATE/TIME ENDED 2/11/05 2313

17. Page 5 of 8 Pages

18. OFFICER OBTAINING THE SIGNATURE IN BLOCK 15:
(Name and Signature)

PERSON WITNESSING THE SIGNATURE IN BLOCK 15:
(Name and Signature)

| METROPOLITAN POLICE DEPARTMENT Washington, D.C. COMPLAINANT/WITNESS STATEMENT | | P.D. 119 REV. 10/89 | |
|---|---|---|---|
| | | 1. COMPLAINT NO. 054-942 | |
| 2. NATURE OF INVESTIGATION Police Use of Force Investigation | | 3. UNIT FILE NO. | |
| 4. STATEMENT OF: (Last, First, Middle) Merrill, Jerome | | 5. DOB Adult | 6. SEX Male |
| 7. HOME ADDRESS On File | | 8. HOME PHONE On File | |
| 9. EMPLOYMENT (Occupation and Location) Metropolitan Police Department Fifth district | | 10. BUSINESS PHONE On File | |
| 11. LOCATION STATEMENT TAKEN 801 shepherd Street, N.W., Washington, D.C. | | | |
| 12. NAME OF OFFICER TAKING STATEMENT (If other than block 18 include signature) Sergeant Eric Levenberry | | 13. DATE/TIME STARTED 2/11/05 2104 | |

14. STATEMENT

Q. Did you strike Mr. Morris in the head with your department issued Glock either intentionally or accidentally?
A. Not to my knowledge

Q. Why don't you know if you did or did not?
A. Because I did not see myself strike him and I did not feel it.

Q. Earlier you stated you were able to get inside the door of the room where Mr. Morris ran into correct?
A. Correct

Q. When you encountered Mr. Morris in the room was he facing you or facing away from you?
A. He was facing me with his hands up under his coat.

Q. What action did you take?
A. I told him to get on the ground and when he did not get on the ground I tried to put him on the ground.

Q. How did you try to get him on the ground?
A. I pulled him by his jacket we started wrestling and he started resisting by pulling away. I pulled him to the ground by grabbing his jacket.

Q. Did you notice him bleeding at this time?
A. No, I was not looking at his face. I was trying to get his arms under control.

15. I HAVE READ THIS STATEMENT GIVEN BY ME OR HAVE HAD IT READ TO ME. I FULLY UNDERSTAND IT AND CERTIFY THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION. "I UNDERSTAND THAT MAKING OF A FALSE STATEMENT IS PUNISHABLE BY CRIMINAL PENALTIES (D.C. CODE SECTION 22-2514)".

Signature of Person Giving Statement

16. DATE/TIME ENDED 2/11/05 2313

17. Page 6 of 8 Pages

18. OFFICER OBTAINING THE SIGNATURE IN BLOCK 15:
(Name and Signature)

PERSON WITNESSING THE SIGNATURE IN BLOCK 15:
(Name and Signature)

| | METROPOLITAN POLICE DEPARTMENT<br>Washington, D.C.<br>COMPLAINANT/WITNESS STATEMENT | | 1. | P.D. 119 REV. 10/89<br>COMPLAINT NO.<br>054-942 | | |
|---|---|---|---|---|---|---|
| 2. | NATURE OF INVESTIGATION<br>Police Use of Force Investigation | | 3. | UNIT FILE NO. | | |
| 4. | STATEMENT OF: (Last, First, Middle)<br>Merrill, Jerome | | 5. | DOB<br>Adult | 6. | SEX<br>Male |
| 7. | HOME ADDRESS<br>On File | | 8. | HOME PHONE<br>On File | | |
| 9. | EMPLOYMENT (Occupation and Location)<br>Metropolitan Police Department Fifth district | | 10. | BUSINESS PHONE<br>On File | | |
| 11. | LOCATION STATEMENT TAKEN<br>801 shepherd Street, N.W., Washington, D.C. | | | | | |
| 12. | NAME OF OFFICER TAKING STATEMENT (If other than block 18<br>Sergeant Eric Levenberry                              include signature) | | 13. | DATE/TIME STARTED<br>2/11/05 2104 | | |

14. STATEMENT

Q. When you and he were wrestling did he ever hit the back of his head on something or make a verbal sound of distress?
A. He was grunting the whole time. I did not notice him hit his head but he could have hit his head on the ground.

Q. Mr. Morris has injuries on the top of his head and over his right eye. Do you know how Mr. Morris sustained his injuries?
A. No I do not

Q. Did Officer Greene strike Mr. Morris in the head in any manner or kick Mr. Morris?
A. Not that I saw

Q. Was your Glock service weapon in your left hand during your entire encounter with Mr. Morris?
A. Yes

Q. Did Mr. Morris ever tell you how he sustained his injuries?
A. No

Q. Did Mr. Morris ever say anything to you?
A. No, he was just complaining he was bleeding.

15. I HAVE READ THIS STATEMENT GIVEN BY ME OR HAVE HAD IT READ TO ME. I FULLY UNDERSTAND IT AND CERTIFY THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION. "I UNDERSTAND THAT MAKING OF A FALSE STATEMENT IS PUNISHABLE BY CRIMINAL PENALTIES (D.C. CODE SECTION 22-2514)".

Signature of Person Giving Statement

16. DATE/TIME ENDED
2/11/05 2313

17. Page 7 of 8 Pages

18. OFFICER OBTAINING THE SIGNATURE IN BLOCK 15:
(Name and Signature)

PERSON WITNESSING THE SIGNATURE IN BLOCK 15:
(Name and Signature)

| METROPOLITAN POLICE DEPARTMENT  Washington, D.C.  COMPLAINANT/WITNESS STATEMENT | | 1. | P.D. 119 REV. 10/89  COMPLAINT NO.  054-942 | |
|---|---|---|---|---|
| 2. | NATURE OF INVESTIGATION  Police Use of Force Investigation | 3. | UNIT FILE NO. | |
| 4. | STATEMENT OF: (Last, First, Middle)  Merrill, Jerome | 5. DOB Adult | | 6. SEX Male |
| 7. | HOME ADDRESS  On File | 8. | HOME PHONE  On File | |
| 9. | EMPLOYMENT (Occupation and Location)  Metropolitan Police Department Fifth district | 10. | BUSINESS PHONE  On File | |
| 11. | LOCATION STATEMENT TAKEN  801 shepherd Street, N.W., Washington, D.C. | | | |
| 12. | NAME OF OFFICER TAKING STATEMENT (If other than block 18  Sergeant Eric Levenberry                     include signature) | 13. | DATE/TIME STARTED  2/11/05  2104 | |

14. STATEMENT

Q. What was going through your mind with your encounter with Mr. Morris?
A. I was trying to effect the arrest and pat him down for weapons.

Q. So far in your statement you have articulated that you were involved in a physical confrontation with Mr. Morris after he committed a crime. It is clear that you did not observe any head injuries to Mr. Morris prior to your contact with him. However, after your contact with Mr. Morris you did observe him bleeding. You further assert that you do not know how he sustained his injuries. Is that accurate?
A. Yes, I do not know if his injuries occurred when I kicked the door in or when I took him to the ground.

Q. What was going through your mind with your encounter with Mr. Morris?
A. I was trying to affect the arrest and pat him down for weapons.

Q. So far in your statement you have articulated that you were involved in a physical confrontation with Mr. Morris after he committed a crime. It is clear that you did not observe any head injuries to Mr. Morris prior to your contact with him. However, after your contact with Mr. Morris you did observe him bleeding. You further assert that you do not know how he sustained his injuries. Is that accurate?
A. Yes, I do not know if his injuries occurred when I kicked the door in or when I took him to the ground.
Q. Is there anything you would like to add to your statement that I may not have asked you? A. Yes out of the many arrests that I have had or contacts with suspects I have never had a use of force issue or complaint, ever.

Thank you for your time and providing the Force Investigation Team with this voluntary statement.

15. I HAVE READ THIS STATEMENT GIVEN BY ME OR HAVE HAD IT READ TO ME. I FULLY UNDERSTAND IT AND CERTIFY THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION. "I UNDERSTAND THAT MAKING OF A FALSE STATEMENT IS PUNISHABLE BY CRIMINAL PENALTIES (D.C. CODE SECTION 22-2514)".

Signature of Person Giving Statement

16. DATE/TIME ENDED  2/11/05  2313

17. Page 8 of 8 Pages

18. OFFICER OBTAINING THE SIGNATURE IN BLOCK 15:  (Name and Signature)

PERSON WITNESSING THE SIGNATURE IN BLOCK 15:  (Name and Signature)