UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. 07-242(RMC) |
| | ) | |
| JEROME MERRILL, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

GOVERNMENT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE OR LIMIT
EXPERT TESTIMONY OF JAMES BRADLEY

Now comes the government, by and through its undersigned counsel, and moves to exclude or limit the testimony of proposed expert witness James Bradley.  Portions of the proposed testimony should be excluded because they are irrelevant and potentially confusing.  Other portions should be excluded as improperly opining upon the ultimate legal issue to be decided by the jury.  Still other portions should be excluded because they improperly impinge upon the jury's role as the trier of fact.

### I.    FACTS

**A.    Charged Conduct**

The defendant has been indicted for violating 18 U.S.C. § 242 (Deprivation of Rights Under Color of Law).  To establish a violation of § 242, the Government must show that the defendant (1) while acting under color of law; (2) willfully; (3) deprived the victim of a right secured or protected by the Constitution or

laws of the United States.  See United States v. Lanier, 520 U.S. 259, 264 (1997) (citing Screws v. United States, 325 U.S. 91 (1945)); United States v. Myers, 972 F.2d 1566, 1569 (11th Cir. 1992) (citing statute); see also United States v. Williams, 343 F.3d 423, 431-2 (5th Cir. 2003); United States v. Mohr, 318 F.3d 613, 618-19 (4th Cir. 2003).  In felony cases, the Government must also prove one of the additional factors listed in the statute.  See 18 U.S.C. § 242; Williams, 343 F.3d at 434 (explaining structure of 18 U.S.C. § 242 felony offense).  Here, the Government has charged that the constitutional violation resulted in bodily injury to the victim, or that the defendant used or threatened to use a deadly weapon (to-wit: a firearm) against the victim during the commission of the crime.

The defendant has been charged with willfully violating the right to be free from excessive force during an arrest or other seizure, as secured to the victim by the Fourth Amendment.  See McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (explaining scope of Fourth Amendment right).  Under the Fourth Amendment, the "touchstone" for the inquiry into excessive force is "objective reasonableness."  Pace v. Capobianco, 283 F.3d 1275, 1281 (11th Cir. 2002).  "The force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer,

and the risk of flight." <u>McCormick</u>, 333 F.3d at 1244 (quoting <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1198 (11th Cir. 2002)).  Thus, a defendant violates § 242 if, while acting under color of law, he willfully uses force in excess of that reasonably needed to make an arrest.

The defendant has also been indicted for violating 18 U.S.C. § 924(c)(Use of Deadly Weapon During Crime of Violence).  To prove that a defendant violated § 924(c)(1)(A), the government must prove three interrelated elements.  First, the government must prove that, at the time of the incident, the defendant was engaged in a "crime of violence."  Second, it must prove that the defendant either "used" or "carried" a firearm as those terms have been defined by the Supreme Court.  Third, the government must prove that the defendant's using or carrying the firearm was "in relation to" the violent crime.  See <u>United States v. Acosta</u>, 470 F.3d 132 (2nd Cir. 2006).

**B.    Expected Proof at Trial**

At trial, the government will prove that the defendant, a Metropolitan Police Department officer, violated § 242 by willfully striking the victim in the head during an arrest made under color of law, even though the victim posed no threat of harm to the defendant or anyone else.  The government will present testimony from the victim, who will state that after the defendant ordered him to get on the ground, he turned his back to

-3-

comply, and at that time, the defendant struck the victim in the head with a hard object that the victim believes to have been a gun.  The government also intends to introduce into evidence a videotape taken at the time of the incident, during which the defendant can clearly be seen holding his service weapon seconds before the incident, and can clearly be heard to tell the victim: "I'll bust you in your head again."  Testimony from an MPD investigator will establish that, after the incident, the defendant denied striking the victim and denied knowing how the victim suffered his head lacerations.

**C.    Proffered Expert Testimony**

On January 31, 2008, counsel for defense, Rudy Acree, provided to the government the *curriculum vitae* of one James Bradley, whom Mr. Acree proposed to present during the trial of this matter as an expert witness.  Mr. Acree promised to provide a synopsis of Mr. Bradley's anticipated testimony to the prosecution soon thereafter, in accordance with Fed.R.Crim.P 16(b)(1)(C).  On the afternoon of February 5, 2008, the government received an e-mail from Mr. Acree that contained as an attachment the following synopsis of Mr. Bradley's testimony, which is reproduced here in its entirety:

<u>**SUMMARY OF JAMES BRADLEY's TESTIMONY**</u>

Mr. Bradley would testify to the following:

--Metropolitan Police Department procedures and training regarding use of force

--National Standard of Care in use of force

--Spectrum of force, use of force continuum, and reasonable use of force


**AND**

--Officer Merrill, based upon his review and available information, acted within nationally accepted procedures and within the nationally accepted standard of care


        After receiving this e-mail, the government attempted to contact Mr. Acree to request a more thorough synopsis of Bradley's anticipated testimony.  On February 6, 2008, Mr. Acree conferred with AUSA John Cummings in regard to Bradley's testimony.  Mr. Acree related to Mr. Cummings that Mr. Bradley intends to testify that, based on Mr. Morris's suspected involvement in a drug transaction, flight, and continued non-compliance, a law enforcement officer would have been entitled to strike Mr. Morris in the head with a hard object.  Nonetheless, Mr. Acree also noted that the defense was not conceding that the defendant intentionally struck Mr. Morris in the head with his firearm or any other hard object.  Mr. Acree also made his expert available for a telephonic interview.  Based on the conversation with Mr. Acree and a subsequent conversation with Mr. Bradley, it appears that the defense will argue that the defendant did not

intentionally strike Wayne Morris with his firearm, and that if he did strike Mr. Morris with his firearm, this strike was unintentional and incidental to the defendant's legitimate attempts to restrain Mr. Morris.

## II.   Law and Argument

**A.    LEGAL STANDARD**

Federal Rule of Criminal Procedure 16(b)(1)(C) states:

"The defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial, if –

> (I)   the defendant requests disclosure under subdivision (a)(1)(G) and the government complies; or
>
> (ii) the defendant has given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition.
>
> This summary must describe the witness' opinions, the bases and reasons for these opinions, and the witness' qualifications."

If a party fails to comply with Rule 16(b)(1)(C), the Court may order the party to produce the discovery in question under the circumstances of the Court's choosing, or it may prohibit the delinquent party from introducing the undisclosed evidence, *inter alia*.  Fed.R.Crim.P. 16(d)(2)(A), (C).

The admission of expert testimony is governed by Fed. R. Evid 702 and analyzed under the framework set out by <u>Daubert</u>[1] and

---

[1] <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579, 597 (1993) (scientific expert testimony is admissible only if it

<u>Kumho Tire Co.</u>[2]  Rule 702 provides as follows:

> "If scientific, technical, or other specialized
> knowledge will assist the trier of fact to understand
> the evidence or to determine a fact in issue, a witness
> qualified as an expert by knowledge, skill, experience,
> training, or education, may testify thereto in the form
> of an opinion or otherwise, if (1) the testimony is
> based upon sufficient facts or data, (2) the testimony
> is the product of reliable principles and methods, and
> (3) the witness has applied the principles and methods
> reliably to the facts of the case."

Fed. R. Evid. 702.  District courts perform an important

"gatekeeping" function by screening proposed expert testimony for

relevance and reliability.  <u>See</u> <u>United States v. Majors</u>, 196 F.3d

1206, 1215 (11th Cir. 1999) (explaining <u>Daubert</u> and <u>Kumho Tire</u>).

    In determining whether proffered expert testimony is

relevant, the appropriate inquiry is "whether expert testimony

proffered in the case is sufficiently tied to the facts of the

case that it will aid the jury in resolving a factual dispute."

<u>United States v. Tucker</u>, 345 F.3d 320, 327 (5th Cir. 2003)

(quoting <u>Daubert</u>, 509 U.S. at 591).  In determining whether

proffered testimony is reliable, the court must consider, among

other factors, whether the expert is "qualified to testify

competently regarding the matters he intends to address."  <u>United</u>

---

"rests on a reliable foundation and is relevant to the task at
hand").

    [2] <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 141 (1999)
(extending <u>Daubert</u> to non-scientific expert testimony requiring
"'technical' and 'other specialized' knowledge").

States v. Hansen, 262 F.3d 1217, 1234 (11th Cir. 2001).

Expert testimony admissible under Rule 702 may be excluded under Rule 403. See Daubert, 509 U.S. at 595 (holding "a judge assessing a proffer of expert scientific testimony under Rule 702 should also be mindful of other applicable rules" and citing, inter alia, Rule 403). Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." United States v. Bowman, 302 F.3d 1228, 1239 (11th Cir. 2002) (quoting Rule 403). "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." United States v. Gilliard, 133 F.3d 809, 815 (11th Cir. 1998) (quoting Daubert, 509 U.S. at 595).

Finally, the court may exclude expert testimony that states a legal conclusion. Although opinion testimony is not per se excludable "because it embraces an ultimate issue to be decided by the trier of fact," see Fed. R. Evid. 704(a), opinions on ultimate issues, particularly ultimate legal issues, are excludable because they do not assist the jury. See United

States v. Smith, 122 F.3d 1355, 1358 & n.1 (11th Cir. 1997)
(declining to find that "ultimate issue" evidence should have
been admitted because evidence did not assist trier of fact); see
also United States v. Barile, 286 F.3d 749, 760 (4th Cir. 2002)
(noting that "expert testimony that merely states a legal
conclusion is less likely to assist the jury" and thus may be
excluded); 4 Weinstein's Federal Evidence § 704.04[2][a] (2003)
("The most common reason for excluding opinion testimony that
gives legal conclusion is lack of helpfulness....The testimony
supplies the jury with no information other than the witness's
view of how the verdict should read.").

Rule 704(b) also sets forth circumstances in which expert
testimony should be excluded. It states:

> "No expert witness testifying with respect to the mental
> state or condition of a defendant in a criminal case may
> state an opinion or inference as to whether the defendant
> did or did not have the mental state or condition
> constituting an element of the crime charged or of a defense
> thereto.  Such ultimate issues are matters for the trier of
> fact alone."

It is well settled that Rule 704(b) applies to all cases in
which an expert testifies as to a mental state or condition
constituting an element of the crime charged or defense thereto.
United States v. Smart, 98 F.3d 1379, 1388 (U.S. App. D.C. 1996);
United States v. Lipscomb. 14 F.3d 1236, 1242 (7th Cir. 1994).
The Seventh Circuit in Lipscomb noted that Rule 704(b) is
particularly important in regard to testimony addressing the

motivations of law enforcement officers, as "the jury may attach 'undue weight' to the officer's testimony, either by mistaking an expert opinion for what is really only an eyewitness observation, or by inferring that the officer's 'opinion about the criminal nature of the defendant's activity is based on knowledge of the defendant beyond the evidence at trial.'" Id. (quoting United States v. Alvarez, 837 F.2d 1024, 1030 (11th Cir. 1988)(other citations omitted). The Seventh Circuit held that such expert testimony could admitted only "as long as it is made clear, either by the court expressly or in the nature of the examination, that the opinion is based on the expert's knowledge of common criminal practices, and not on some special knowledge of the defendant's mental processes." Id. at 1242-43 (citations omitted).

**B.     THE DEFENSE'S EXPERT TESTIMONY SHOULD BE EXCLUDED BECAUSE THE RELEVANT PARTS OF SAID TESTIMONY WILL BE CUMULATIVE AND DUPLICATIVE.**

As noted above, Mr. Bradley is apparently prepared to testify as to "Metropolitan Police Department procedures and training regarding use of force." The government agrees that testimony in this regard may be relevant in this case. But even assuming *arguendo* that Mr. Bradley is qualified to provide such testimony, such testimony will be cumulative and duplicative. In its case-in-chief, the government expects to provide testimony from MPD Sergeant Eric Levenberry, who will provide an overview

of the relevant use of force policies of the MPD at the time of
the incident.  The government expects that Sgt. Levenberry's
testimony in this regard will be uncontroverted.  Accordingly,
any additional testimony in this regard from Mr. Bradley will
merely reiterate facts and conditions that will not be in
dispute.  As Rule 403 permits the exclusion of evidence for
considerations of "undue delay, waste of time, or needless
presentation of cumulative evidence," the government moves the
Court to exercise its discretion under Rule 403 by excluding
Bradley's testimony.  In the alternate, the government moves the
Court to order the defense not to present cumulative or
duplicative testimony from Mr. Bradley in regard to the MPD use
of force policy.

**C.    THE TESTIMONY OF THE DEFENSE'S EXPERT WITNESS SHOULD BE
        EXCLUDED BECAUSE IT RELATES TO FACTUAL QUESTIONS THAT SHOULD
        BE DETERMINED BY THE TRIER OF FACT ALONE**

        As noted above, Mr. Bradley intends to testify that "Officer
Merrill, based upon his [Bradley's] review and available
information, acted within nationally accepted procedures and
within the nationally accepted standard of care."  It further
appears that Mr. Bradley will testify that the defendant's
assault upon the victim was a legitimate act of police procedure.
Thus, it seems that Mr. Bradley intends to testify in the
capacity of an expert for the purpose of telling the jury how it
ought to decide the case.  Such testimony is abusive of Mr.

Bradley's putative status as an expert, and should be excluded.

At the trial, the jury will be asked to resolve two fundamental questions: 1) did the defendant intentionally "pistol-whip" the victim during the incident, and 2) if so, did that "pistol-whipping" constitute a reasonable seizure under the Fourth Amendment of the Constitution?  Expert testimony cannot possibly lend any insight into the first question, as it requires a factual determination for which no specialized knowledge is needed.  Yet the second question is also beyond the ability of the expert to address.  As noted above, the government believes it will be uncontroverted at trial that 1) "pistol-whipping" an individual in the head constitutes a use of lethal force under MPD policy; and 2) under MPD policy, lethal force may be used only to defend oneself or another from an actual or threatened attack that is imminent and that could result in death or serious bodily injury.  A jury requires no specialized knowledge to determine whether the victim posed a threat to the defendant or anyone else at the time of the incident, particularly as the lethal force in question (i.e., a "pistol-whipping") was not unusually complex or obscure.[3]  An expert who testified as to his

---

[3] In <u>Kopf v. Skyrm</u>, 993 F.2d 374 (4th Cir. 1993), the Fourth Circuit noted that expert testimony can be permitted when the police use of force in question involved a specialized area of knowledge, although when the force "is reduced to its most primitive form," <u>id.</u> at 379, such testimony might not be helpful. In this case, the use of force is exceedingly primitive, as the act of bludgeoning another with a metal object requires no

opinion in this regard would be doing nothing but reviewing the
same evidence that the jury will be called upon to review in its
deliberations, and offering his own opinion of the conclusion
that the jury should reach.  Rules 701, 702, 704, and 403 were
explicitly designed to prevent "the admission of opinions which
would merely tell the jury what result to reach, somewhat in the
manner of the oath-helpers of an earlier day."  Fed.R.Evid. 704,
Committee Notes (1972 Proposed Rules).  As Mr. Bradley is no more
qualified than any juror to determine the purportedly threatening
nature of the victim's alleged actions, Mr. Bradley's testimony
in this regard will not help the jury to understand the evidence
(pursuant to Rule 702) and should thus be excluded.

        In analogous settings, courts have held that when the
primary inquiry of a case is factual in nature, expert testimony
may be properly excluded.  In <u>Eadon v. Gantt</u>, No. CV-04-0952-PHX-
MHM (CRP), slip op. 2007 WL 810098 (D.Ariz. March 15, 2007), a
plaintiff brought suit against two officers who had allegedly
sprayed him with Mace, kicked him, shocked him with a Taser, and
attempted to run him over during a routine arrest, even though
the plaintiff had not provoked such attacks.  The officers moved
for summary judgment, relying in part on proposed expert
testimony stating that the officers used appropriate force during

---

special training to understand.  Thus, no expert testimony is
needed for the jury to understand that use of force.

the arrest.  The court excluded the expert testimony and held

that the testimony related to an issue:

> "...that is well within the lay competence.... Here, the
> disputed issues include whether Plaintiff posed a serious
> threat and whether [the officer] attempted to run Plaintiff
> over with his car.  There is no need for specialized
> knowledge to decide these issues; indeed they are precisely
> the sort of issues that lay people are equipped to resolve."

Id. at *3.  See also United States v. Henderson, 409 F.3d

1293 (11th Cir. 2005)(expert testimony in regard to police use of

excessive force excluded, as central issues of case were factual

and thus properly determined by the trier of fact); Pena v.

Leombruini, 200 F.3d 1031, 1034 (7th Cir. 1999)(expert testimony

regarding police use of excessive force excluded because "the

jury needed no help in determining whether [the officer] was

acting reasonably. [...] [W]hether the danger was sufficiently

lethal and imminent to justify the use of deadly force was within

lay competence."), United States v. Schatzle, 901 F.2d 252, 257

(2d Cir. 1990)(testimony of law enforcement use of force expert

witness excluded), Wells v. Smith, 778 F.Supp. 7, 8 (D.Md.

1991)(reasonableness is a question of common sense and community

judgment, not expert assessment).  As the jury needs no expert

guidance to understand the level of threat that the victim did or

did not pose at the time of the incident, Mr. Bradley's testimony

will be unhelpful and should be excluded.

**D.    THE TESTIMONY OF THE DEFENSE'S EXPERT WITNESS SHOULD BE
EXCLUDED BECAUSE DISCUSSION OF "NATIONALLY ACCEPTED
PROCEDURES" IS IRRELEVANT AND CONFUSING.**

In the summary of Mr. Bradley's anticipated testimony, the defense indicates that Mr. Bradley will testify as to "nationally accepted procedures" and "the nationally accepted standard of care" for police use of force.  These subjects are completely irrelevant to this case.  The introduction of such subjects at trial runs the risk of confusing the jury as to the proper legal standard for finding a violation of 18 U.S.C. § 242.

As noted above, 18 U.S.C. § 242 is violated when a defendant, acting under color of law, willfully deprives another of a constitutional right.  The right at issue in this case is the right to be free of unreasonable seizures pursuant to the Fourth Amendment.  The government will prove that the defendant used unreasonable force during the arrest of the victim, thereby subjecting the victim to an unreasonable seizure. "Reasonableness" is the central question when assessing whether excessive force was used during a seizure.  Graham v. Conner, 490 U.S. 386, 395 (1989).  Thus, the key question in regard to the defendant's actions is whether his putative actions were *reasonable*, not whether those actions *aligned with national standards and practices*.  The government is aware of no evidence whatsoever to suggest that actions in compliance with "national standards and practices" are necessarily reasonable for purposes of the Fourth Amendment, nor does any evidence indicate that Mr. Bradley is qualified to testify about constitutional law.

-15-

Whatever the relevance of "national standards" to *civil negligence* cases, such standards have no relevance to *criminal civil rights* cases, such as this matter.  Testimony regarding "national standards and practices" would only confuse a jury as to whether it should apply a constitutional standard or a "national practices" standard when assessing the defendant's actions.  Legal standards and definitions are matters over which the Court has exclusive control.  Thus, the Court should prohibit any testimony from Mr. Bradley that invades or dilutes the Court's control over legal matters.

Moreover, the government is aware of no evidence to indicate that the defendant ever received any kind of training or instruction in "national standards" of police procedure.  Thus, testimony as to "national standards" cannot lend any insight into the willfulness of the defendant's actions.  To the contrary, such testimony would invite the jury to wrongfully infer that "national standards" affected the defendant's behavior and/or judgment during the incident in question.  Such a wrongful inference would needlessly confuse the jury.

Accordingly, the Court should exercise its discretion under Rule 403 and exclude Mr. Bradley's testimony altogether, or, in the alternate, issue an Order precluding him from testifying as to national standards and practices regarding police use of force.

-16-

**E.    SHOULD THE COURT PERMIT MR. BRADLEY'S TESTIMONY, THE COURT SHOULD ISSUE AN ORDER <u>IN LIMINE</u> THAT PRECLUDES MR. BRADLEY FROM PRESENTING IMPERMISSIBLE TESTIMONY.**

For the foregoing reasons, the government moves that Mr. Bradley's testimony be excluded in its entirety.  Should the Court elect to permit Mr. Bradley's testimony, the government moves the Court to restrict Mr. Bradley's testimony in the following areas:

1)    As noted above, the Court should not permit Mr. Bradley to present cumulative and/or duplicative testimony regarding MPD use of force policy.

2)    As noted above, the Court should not permit Mr. Bradley to testify as to national standards and practices regarding police use of force.

3)    The Court should not permit Mr. Bradley to testify in any manner as to the defendant's intent or state of mind during the incident.  Such testimony would clearly violate Rule 704(b).  As the court noted in <u>United States v. Boyd</u>, 55 F.3d 667 (U.S. App. D.C. 1995):

> "If a jury has reason to be unsure of a defendant's guilt, but is made to listen to an 'expert' who claims to know the defendant's state of mind, the jurors may rely on the purported expertise of the Government witness to cure the ambiguity that they face.  This is precisely what

-17-

the rule prohibits, for it is the jurors (not the expert) who must decide the ultimate issue of fact. There would be little need for a trial before a jury if an expert is allowed simply to declare the defendant's guilt." Id. at 672.

4) The Court should not permit Mr. Bradley to testify as to the credibility of the defendant's representations in regard to this incident. "Expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not assist the trier of fact as required by Rule 702." United States v. Charley, 189 F.3d 1251, 1267 (10th Cir. 1999) (internal quotations omitted); see also United States v. Azure, 801 F.2d 336, 339-40 (8th Cir. 1986); United States v. Shay, 57 F.3d 126, 130-31 (1st Cir. 1995); 4 Weinstein's Federal Evidence § 702.06[1][a] (2003).

5) The Court should preclude Mr. Bradley from testifying that the defendant's use of force "met" the Fourth Amendment's reasonableness standard. As noted above, Mr. Bradley is unqualified to offer expert testimony as to questions of law. Additionally, as noted above, a jury is capable of determining the "reasonableness" of

-18-

a seizure without expert guidance.  Moreover, expert testimony that merely states a legal conclusion does not assist the jury in making its determination.  <u>See United States v. Barile</u>, 286 F.3d at 760; 4 Weinstein's Federal Evidence § 704.04[2][a] (2003).  The Fifth Circuit held, in a § 242 excessive force case, that an expert may not opine on whether a particular use of force is "reasonable" because "reasonableness under the Fourth Amendment or Due Process Clause is a legal conclusion."  <u>Williams</u>, 343 F.3d at 435, <u>see also Maiz v. Virani</u>, 253 F.3d 641, 667 (11th Cir. 2001) (allowing the admission of expert testimony on the ultimate legal issue where an instruction was given to "prevent a jury from placing too much weight on an expert's legal conclusions").  In the instant case, it appears that Mr. Bradley will testify on precisely the same legal conclusion that this jury will be asked to reach.  Such testimony is improper and should be excluded.

6)    The Court should preclude Mr. Bradley from presenting any testimony that interprets the videotape of this matter.  The jurors are fully capable of interpreting events on the videotape and drawing their own conclusions.  Admission of interpretive testimony from

-19-

an expert may cause jurors to rely on the expert
witness' observations and not their own, thus
subverting the fact-finding process.  Moreover, there
is no reason to believe that the defense expert is
better qualified to interpret videotaped events than
any other witness.  Accordingly, such testimony should
be excluded.

7)    The Court should preclude Mr. Bradley from any
testimony made in reliance on facts and/or evidence not
before the Court.  Mr. Bradley has told us that he has
spoken to the defendant and received an independent
statement from him regarding the events in question.
It is self-evident that Mr. Bradley may not present
testimony based upon statements of the defendant that
neither the government nor the jury has reviewed.
Moreover, it would be improper for the defendant to
have his statement effectively entered into evidence
through the testimony of an expert witness, without
having that statement subject to an oath and cross-
examination.  Accordingly, the Court should issue an
order precluding Mr. Bradley from testifying as to any
statement or evidence that has not been presented to
the jury prior to Mr. Bradley's testimony.

### III. Conclusion

For the reasons stated above, the government respectfully requests that this court exclude or limit the testimony of James Bradley. The government requests a expedited hearing on these issues. Furthermore, the government moves the Court for an order precluding the defense from making reference to anticipated expert testimony in its opening statement. This order should apply until the Court can fully resolve the matters addressed in this filing.

SUBMITTED: February 7, 2008


Respectfully submitted,


GRACE CHUNG BECKER            Jeffrey A. Taylor
Acting Assistant Attorney General   United States Attorney
Civil Rights Division          District of Columbia


By:_____**/s/ Douglas Kern**_____
DOUGLAS KERN
Trial Attorney
Civil Rights Division
601 D St. NW
Washington, DC 20004
(202) 616-3954
Doug.kern@usdoj.gov


_____**/s/ John Cummings**_____
JOHN CUMMINGS
Assistant United States
Attorney
555 4th St. NW
Washington, DC 20530
(202) 514-7561
John.cummings@usdoj.gov

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. 07-242(RMC) |
| | ) | |
| JEROME MERRILL, | ) | |
| | ) | [Proposed] ORDER |
| | ) | |
| Defendant. | ) | |

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that, pursuant to the motion of the government, and for good cause shown, the expert testimony of James Bradley in the trial of the above-captioned matter shall be limited as follows:

1) Mr. Bradley shall not provide duplicative testimony in regard to the use of force policy of the Metropolitan Police Department;

2) Mr. Bradley shall not testify in regard to national standards and practices for the use of force by law enforcement officers;

3) Mr. Bradley shall not testify as to the defendant's intent or state of mind in regard to the events that give rise to this matter;

4) Mr. Bradley shall not testify in a manner that vouches for the credibility of the defendant or the defendant's statements;

5) Mr. Bradley shall not testify in regard to the "reasonableness" of the defendant's alleged use of force;

6) Mr. Bradley shall not testify in a manner that offers his interpretation of the videotape of the events of February 11, 2005; and

7) Mr. Bradley shall not offer testimony made in reliance upon facts, statements, and/or evidence not before the jury at the time of Mr. Bradley's testimony.  Mr. Bradley shall not testify in reliance upon any

-22-

statement that the defendant may have made privately to
Mr. Bradley unless and until the defendant has been
made available to the government for cross-examination.

IT IS SO ORDERED.

By my hand this _____ day of February, 2008.


_____
Judge Rosemary Collyer